# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

Dallas


ORIGINAL

klcouncil888 aka Kenneth Council
Plaintiff

v.

Draftkings  Joe Doe 1 and John 2
Defendant

FILED-USDC-NDTX-DA
'24 JUN 5 PM 12:37
KMB

3-24CV1370-D

Civil Action No.

## COMPLAINT

See Attached Sheets

\* Attach additional pages as needed.

| | |
|---|---|
| Date | 05/3/2024 |
| Signature | Kenneth Council |
| Print Name | Kenneth Council |
| Address | 1723 Pine St |
| City, State, Zip | Dallas Texas 75215 |
| Telephone | 5617676522 |

Civil Rights Claim (Northern District of Texas)

Overview

Draftkings geoplay does not function properly and is publicly known to have issues which provide unfair and unequal advantages to nonurban players, costing urban thousands of dollars to urban players like Council.

Draftkings knew or should have known that its geoplay software function is less accurate in urban areas than nonurban areas. Despite the use of inaccurate location software Draftkings arbitrarily suspended urban players from the contest during mid-game (and while they were winning and still had players to insert).

Draftkings is placing location accuracy burden on Players like Council.

When a player enters a contest the player is paying for (location accuracy) if the location software being relied upon by dRAFTKINGS is defective: then Draftkings committed fraud (as a player has an expectation that the geosoftware dRAFTKINGS RELIES on provides all player with the same protection. Draftkings has an obligation to ensure that the players are aware that Draftkings geosoftware is defective and could make false reads and that Draftkings would not be able to fix them in

time during the contest, and provided more protection to nonurban players.

Drafting has no in contest means of correcting location errors generated by defective software other than to restrict playeras accounts based on false suspicions and inaccurate readings.

Despite draftkings being aware of such problems they failed to advise players in these areas of the fact that the geo software would not function as effectively for urban players as would for players in less populated areas.

Draftkings knew that suburban players would have a better in contest experience than urban players due to software glitches which occurred more frequently in urban areas.

Draftkings has a policy that provides less location protection for urban players than for nonurban players:

Urban players are restricted at much higher rate than players in nonurban areas burning game play.

The masking discrimination policy and unequal in-game protection exposes urban players to significant losses and terribly unreliable in contest glitches which give non urban players a concerted advantage over urban players.

Resulting in a racial disparity not seen since Jim Crow.

**(Overview of Racially Base Location Accuracy Data)**

False positives can indeed be frustrating for players, especially when they're wrongly restricted due to location inaccuracies.

False positives in esports tournaments due to location inaccuracies can have significant consequences for players. Here are some potential impacts: (Council suffered all of the problems below)

1. **Disqualification**: If a player is falsely flagged as being outside the allowed jurisdiction during a tournament, they may be disqualified from participating. This can be devastating, especially if they were performing well.
2. **Loss of Prizes**: Imagine a player reaching the finals, only to be disqualified due to a false positive. They'd miss out on potential prize money, recognition, and career opportunities.
3. **Reputation Damage**: False positives can tarnish a player's reputation. Others might question their integrity or accuse them of cheating, even if it was a technical error.
4. **Emotional Stress**: Esports players invest time, effort, and passion into tournaments. A false positive can cause frustration, anger, and disappointment.

5. **Team Impact:** In team-based esports, a false positive affects the entire team. Losing a key player due to location restrictions can weaken the team's performance.

Platforms and tournament organizers are aware of these risks. They continually refine location checks to minimize false positives and maintain fair play. Ensuring accurate location checks is crucial for online gaming platforms. While false positives can occur, platforms have a legal obligation to minimize location inaccuracies. Here's how they address this:

1. **Legal Compliance:** Platforms must adhere to local and international laws regarding online gambling, gaming, and player eligibility. Accurate location checks are essential to meet these legal requirements.
2. **Risk Mitigation:** False positives pose risks to both players and platforms. To prevent legal issues and maintain trust, platforms invest in robust geolocation technology.
3. **Customer Support:** When players encounter false positives, they can reach out to customer support. The platform investigates and adjusts restrictions if necessary.
4. **Transparency:** Platforms communicate their location check processes clearly. Players should understand how it works and what to do in case of false positives.

Accurate location checks are indeed essential to meet legal requirements in the gaming industry. When platforms fail to maintain accurate geolocation services, they risk legal consequences, including lawsuits. Players who experience false positives due to location inaccuracies may seek legal recourse if their gaming experience is significantly impacted. It's crucial for platforms to strike a balance between security and fair play while minimizing false positives.

Statement of Facts

1. Council began to seriously invest in Draftkings in April of 2024.
2. Purchasing a new laptop, Samsung Smart TV, Mlb TV yearly subscription etc.
3. Council learned to play fantasy baseball in the mid 80s and has won hundreds of thousands of dollars over the course of 40 plus years on baseball calculations.
4. Council adheres to Gibson Theory (a trade secret he employed in dfs contest based on the fundamental fact that Josh Gibson was purely Josh Gibson and not the black Babe Ruth.) A scheme based on truth always undermines the next player's line up.
5. A part of the scheme (as with most schemes) requires studying your opponents lineup tendency to accomplish this. Council stopped winning for a few days to study other folks' line ups.
6. Once Council saw that these contests (called multipers) were being controlled by (cluster players) tickets which contained 70 percent of the same players.

7. Council instituted the Josh Gibson Line up which has a superior complex mosaic (of bat order placement based on the same scales that John Coltrane used to write Equinox) the lineup is pure balance and unbreakable. Simple math the number 4 produces the most periods. You can have 8 of them in a DFS Lineup at one time. Council began to do this.

8. On or about 05/28/24 Draftkings began to send statements telling third parties that Council had "repeated instances of location jumping and suspected accounts".

9. According to the information found, location jumping could only occur if a Draftkings Player has been to another state using his account to wager or a state that does not allow Draftking and entered a contest.

10. Council has verifiable proof he nor any of his associated devices have left the state of Texas since July Of 2023 therefore Draftkings has clearly and intentionally committed defamation per se in order to confiscate his monies and prevent income.

11. Council has 100 percent proof he has not left Texas in over 10 months at no time on which the Defendants false claims of location sharing are based upon.

12. "Suspect account sharing" a claim baseless in and of itself. Draftkings contended to Council that in the United States of America that Draftkings has an unfretted right to confiscate monies, impede commerce, and deny a Black Family the same or similar economic well being white baseball players enjoy, because Draftkings suspects someone of doing something. (Which they

cannot prove (or) provide a nonracial stereotype of why they have these racist suspicions.

13. Draftkings has provided not a single note of evidence of account sharing. Account sharing is a simple technical occurrence to provide evidence of.

14. Drafrkings has robbed me of my money, defamed my name, and done this all in the middle of one of the longest black outs in the history of America.

15. Draftkings unrestricted Council accounts on 05/28/24.

16. Council entered 6 contests on 05/29/24 with Draftkings (Main MLB Classic).

17. Council a baseball purist used a (Josh Gibson) stack busters: a stack buster is used by solo players on Draftkings because Draftkings is based on a cluster of players usings 70 percent of the same players.

18. Council used only 3/4/5 hitters in his initial line up (Players Like B. Rogers, A Kiriloff, McMahon, B Bichette etc. Gibson stratagem is unbreakable. Council deployed this stratagem and Draftkings insiders panic.

19. Draftkings insiders began issuing defamatory and false statements to third parties and sharing such information across electronic wire transfers: claiming Council would be restricted from the contest he had entered due to "location jumping and account sharing".

20. Draftkings provided no evidence of such defamatory statements used to unjustly enrich Draftkings at Council's expense based on an unfair and criminal abuse of contract.

21. Draftkings deprived Council of tangible profits and investment interest in potential winnings totalling 11,200: Draftking restricted Councils access to the final information associated with these contests in order to unjustly deprive Council of his property.

22. The Gibson strategy is used to place leverage on cluster/clutter players. This is accomplished by ensuring you have at least two each of the players in the cluster players lineups: take the 4 hitter (no ticket wins without production from that position).

23. Council picked the perfect Day to apply Gibson Stratagem (when the over total scoring was very low) Council had 75 to 100 percent availability of all the players which would eventually score in the top 3 percent (ensuring top 3 wins across the board).

24. Council also had several slots available for the final games based on Council's previous lineup (for this set of series) Council was prepared to use the same Players he had used before in the late Games: NYY vs LAA and Hou vs Sea (players available and were on Council's pinch hit list (and were used the day before by Council) players like J Rodriguez, D Conzone, A. Volpe, J Meyers, etc.

25. On 05/29/24 Council began processing pinch hitters into his line ups around 7:25 pm shortly after Draftkings began to disrupt Councils line ups, inserts, and then eventually blocked his account.

26. Draftkings claims are 100% provably false. 100 percent of all Council's transmission to Draftkings were submitted via a Dallas network located in North Texas somewhere in Dallas County. Location Jumping can only occur when a player leaves the state they are registered to play in.

27. Draftkings extended its defamation per se of Council costing (him) 11200.00 when Draftkings accused Council of account sharing. A total lie which Draftkings cannot prove.

28. On 05/29/24 the last time Council checked his winnings were approximately 6120.00.

29. Based on projections, Council's lineups had scored approximately 35 pts each with (70 PIR) remaining meaning that Council was average 35 per 20 (pir) 35 x 4 = 140 + 17.5 + 157.5.

30. On the date in question 157.5 pts scored would have been one of the highest if not highest total scored in (all three multiplier contests Council entered) and Draftkings had unjustly restricted him from.

Resolution

Council requests

11, 200 from Draftkings (The amount Council would have won)

Legal Expenses 3600.00 from Draftkings

Punitive Damages: 808, 008.00 USD For intentional tort based discrimination software.

# CIVIL COVER SHEET

RECEIVED

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## I. (a) PLAINTIFFS
Klcouuncil888 aka Kenneth Council

## DEFENDANTS
Draftkings

**(b)** County of Residence of First Listed Plaintiff: **Dallas**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Hudson**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Prose

Attorneys *(If Known)*

3-24CV1370-D

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [x] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USCA I(*#
Brief description of cause:
Impeding Commerce and Electronic Defamation Per

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 888000

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 05/31/2024

SIGNATURE OF ATTORNEY OF RECORD: Kenneth Council

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____