UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

NOVEL DISINFECTIVE SOLUTIONS and

KENNETH COUNCIL,

*Plaintiffs,*

v.

DRAFTKINGS INC.,

GEOCOMPPLY SOLUTIONS INC.,

ED SERNA (in his individual and official capacity),

COBLENTZ PATCH DUFFY & BASS LLP, and

RICHARD PATCH (individually),

*Defendants.*

Case No.: 3:24-cv-01370

---

VERIFIED AMENDED COMPLAINT AND RICO CASE STATEMENT

Plaintiff Kenneth Council, appearing *pro se* and as the primary operator of Novel Disinfective Solutions, hereby files this Verified Amended Complaint against the above-named Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 42 U.S.C. § 1983, and state law claims of Conversion, Defamation, and Independent Fraud.

III. FACTUAL ALLEGATIONS

A. The Nature of the Enterprise and its Digital Infrastructure

1. Enterprise Infrastructure: Plaintiff's business, Novel Disinfective Solutions, utilized the DraftKings Daily Fantasy Sports ("DFS") platform as its essential commercial workspace and primary tool of trade, serving as the fundamental digital asset infrastructure necessary for its primary business operations [1, 2].

2. Proprietary Methodology: As a core asset of the enterprise, Plaintiff developed and refined the "Josh Gibson Stratagem," a specialized commercial methodology and proprietary analytical framework housed within this digital workspace [2, 6].

3. Intangible Property Interests: This infrastructure included not only liquid capital but also historical datasets, trade secrets, and proprietary research that constitute intangible personal property protected under federal and state law [1, 5].

4. The Falsified Compliance Trigger: In May 2024, Defendant GeoComply issued a false and erroneous "location violation" report to Defendant DraftKings, alleging a "location jumping" event—a technical impossibility based on the Plaintiff's actual physical coordinates [4, 7].

5. Extrajudicial Determination: This report constituted an extrajudicial determination of a geofencing breach, representing a direct attack on the digital data integrity required for the Plaintiff to maintain operational access to their essential commercial workspace [2].

6. Conversion of Assets: Acting upon this fabricated data, Defendant DraftKings executed a permanent administrative freeze on the Plaintiff's account and an extrajudicial seizure of $17,320 in accrued winnings, effectively converting the Plaintiff's digital tools and capital for its own use [5, 6].

B.  The Pattern of Racketeering: Fraudulent Reporting to Financial Institutions

7. The Fraudulent Pattern: Between June 24 and August 3, 2024, Defendant DraftKings initiated thirty-one (31) distinct fraudulent interstate wire transmissions to Bank of America, specifically characterizing the Plaintiff's lawful chargebacks as "fraudulent." [4]

8. Factual Impossibility: To justify these reports, DraftKings asserted that the Plaintiff was physically present in Texas during the disputed transactions, verified by GeoComply with a precision of 500 feet. [3, 5]

9. Regulatory Deception: DraftKings further represented to the financial institution that this geofencing verification was a mandate of the Texas Lottery Commission for "regulated online casino operations." [6]

10.  Misrepresentation of Law: Because online casinos and sports betting are currently unregulated and illegal in Texas, the Defendant's claim of a "mandatory regulatory check" constitutes a deliberate misrepresentation of law and a factual impossibility intended to deceive the financial institution. [3]

11. Injury to Business and Property: These thirty-one (31) predicate acts of wire fraud served as the mechanism to finalize the extrajudicial seizure of the Plaintiff's $17,320 and the permanent deprivation of the Josh Gibson Stratagem datasets. [2, 5]

C.    The    Specific    Fraudulent    Misrepresentations    to    Financial Institutions

12.  The Defamatory Accusation: In its communications to Bank of America, Defendant DraftKings explicitly characterized the Plaintiff's lawful chargebacks as a fraudulent attempt to "recover from gambling losses," a statement made with reckless disregard for the truth and intended to induce the bank to reverse the credits.

13.  Omission of Infrastructure Failure: While DraftKings submitted a Summary of Evidence including the Plaintiff's transaction volume—noting 89 deposits totaling $2,590 and 1,128 contests—it deliberately omitted the fact that the account was frozen due to a faulty GeoComply location report.

14.  Contradictory Compliance Claims: Despite claiming the Plaintiff was an "active user" with a verified history since August 2023, DraftKings relied on the impossible "Texas location" data to justify the seizure, creating a factual contradiction that proves the pretextual nature of the account termination.

15. Misappropriation of Accrued Equity: The Defendant's own data confirms the Plaintiff had accumulated $3,523.62 in contest winnings, yet DraftKings utilized the fraudulent reports to the bank as a primary mechanism to retain these funds and the $17,320 total balance, completing the conversion of the enterprise's assets.

C. The Factual Impossibility of the Texas Compliance Narrative

16. The Geofencing Fabrication: To induce Bank of America to reverse the Plaintiff's lawful credits, DraftKings submitted documentation representing that GeoComply—a service it claimed was mandated by the Texas Lottery Commission—had verified the Plaintiff's precise location and device within the state of Texas with a precision of 500 feet or less [4, 7].

17. Factual and Legal Impossibility: The assertion that the Plaintiff was operating within a "regulated online casino and sports betting site" in Texas is a factual impossibility, as online casinos and sports wagering remain unregulated and illegal under Texas Penal Code §§ 47.01-07 [4].

18. Misrepresentation of Regulatory Authority: Furthermore, the Texas Lottery Commission does not maintain a mandate for geofencing services related to online casinos, as it possesses no regulatory oversight over such prohibited activities; thus, DraftKings' report constitutes a deliberate misrepresentation of law to a financial institution [7].

19. Pretextual "Location Jumping": The Defendants utilized this fabricated "location jumping" alert—alleging the Plaintiff's digital presence in a jurisdiction where the service is legally barred—as a technical pretext to justify the extrajudicial seizure of the Plaintiff's $17,320 and the permanent closure of the enterprise's essential commercial workspace.

20. Concealment of Systemic Error: In its transmissions to the bank, DraftKings knowingly suppressed the high rate of false positives inherent in Wi-Fi triangulation and IP geolocation, instead presenting the erroneous data as an absolute "compliance verification" to facilitate the conversion of the Josh Gibson Stratagem and associated business assets [5, 6].

21. Systemic Administrative Burden: This fraudulent compliance report was applied individually to each of the thirty-one (31) disputed transactions, forcing the Plaintiff to exhaustively contest and overcome the same fabricated "location jumping" narrative thirty-one (31) separate times to defend his right to his business property.

22. Intentional Pattern of Harassment: The repetitive application of this known falsehood across thirty-one (31) distinct reports demonstrates a coordinated pattern of racketeering activity designed to overwhelm the Plaintiff's resources and finalize the conversion of the $17,320 in accrued winnings and the Josh Gibson Stratagem data.

23. Weaponization of Compliance Data: By compelling the Plaintiff to rebut the same erroneous GeoComply geofencing data on

thirty-one (31) occasions, DraftKings utilized its terms of use as a weapon to facilitate an extrajudicial seizure of the enterprise's digital asset infrastructure.

D. Environmental and Technical Interference on Geofencing Data

24.  Concurrent Environmental Disturbance: On May 30, 2024, the North Texas region, including Dallas, was subjected to severe atmospheric instability, including large hail, hurricane-force winds, and extreme flooding following a major derecho event only 48 hours prior.

25.  Atmospheric Signal Attenuation: Severe weather of this magnitude—characterized by high water vapor content, lightning-induced electromagnetic noise, and dense precipitation—is known to cause GPS signal attenuation and multipath interference, which significantly degrades the accuracy of geofencing and location-verification services like GeoComply.

26.  Technical Causation of "Location Jumping": These atmospheric disturbances frequently result in "GPS confusion" or "scintillation," where the device reports erroneous or non-contiguous coordinates—a phenomenon commonly and incorrectly flagged by DraftKings as illicit "location jumping".

27.  Infrastructure Failure and Latency: The widespread power outages (impacting over 300,000 customers in the region) and subsequent reliance on backup internet infrastructure further induced network latency and IP geolocation errors, rendering the

GeoComply "500-foot" precision claim a technical impossibility during the relevant period.

28.  Knowing Disregard of Environmental Factors: Despite public and National Weather Service alerts regarding the severe North Texas storm conditions, DraftKings and GeoComply knowingly disregarded the high probability of weather-induced data corruption, instead utilizing the flawed results to justify the extrajudicial seizure of the Plaintiff's $17,320 and the conversion of the enterprise's business property.

29.  Coordinated Extortionate Pressure: As a tactical extension of the overarching racketeering scheme, Defendant DraftKings knowingly submitted falsified employment data to the Texas Workforce Commission ("TWC"), intentionally inducing Defendant Ed Serna and state officials to deny the Plaintiff's Disaster Unemployment Assistance ("DUA") benefits following the documented May 2024 North Texas storms.

30.  Weaponization of State Agency Power: This conspiracy between private and state actors utilized the TWC as an instrument of extrajudicial coercion, aimed at depriving the Plaintiff of a protected property interest in disaster relief to force the abandonment of his legal claims regarding the conversion of the $17,320 and the Josh Gibson Stratagem.

Section F: The Pattern of Racketeering Activity

31. Relatedness of Predicate Acts: The thirty-one (31) acts of wire fraud described herein are related, as they share the same purpose

(the conversion of Plaintiff's business assets), the same victim (the Plaintiff and Novel Disinfective Solutions), and the same methods (the transmission of fabricated "location jumping" reports and Texas regulatory misrepresentations to Bank of America).

32. Closed-Ended Continuity: These predicate acts occurred over a substantial, discrete period between June 24 and August 3, 2024, constituting a closed-ended pattern of racketeering activity intended to finalize the extrajudicial seizure of the Plaintiff's $17,320 and the proprietary Josh Gibson Stratagem data.

33. Open-Ended Continuity: Alternatively, the Defendants' conduct poses a threat of open-ended continuity, as the misappropriation of the Josh Gibson Stratagem and the retention of converted funds are ongoing. The misuse of geofencing data as a pretext for account seizure is a regular way of conducting business for the DraftKings enterprise.

34. Specificity of Fraud (Rule 9(b)): Each of the thirty-one (31) transmissions was made with the specific intent to defraud a financial institution and the Plaintiff, utilizing the interstate wires to deliver factually impossible location data to induce the wrongful reversal of credits and the deprivation of property.

35. The Shadowing and Covert Degradation Phase: Prior to the formal administrative freeze, Defendant DraftKings engaged in the shadowing of the Plaintiff's account—a process of covertly degrading platform functionality and restricting the Josh Gibson Stratagem analytical tools without notice to the Plaintiff.

36.   Strategic Deception and Asset Entrapment: This shadowing phase was strategically designed to prevent the Plaintiff from withdrawing his $17,320 in accrued winnings or securing his proprietary historical datasets before the final extrajudicial seizure was fully executed.

37.   Covert Surveillance and Data Scraping: During this period of shadow-locking, DraftKings and GeoComply utilized covert surveillance to monitor the Plaintiff's attempts to access his essential commercial workspace, gathering metadata to bolster their fabricated "location jumping" narrative.

38.   Interference with Damage Mitigation: By shadowing the account rather than providing immediate transparency, the Defendants effectively trapped the Plaintiff's intangible personal property within a compromised environment, stripping him of the ability to mitigate damages or contest the erroneous Texas regulatory assertions.

39.   Coercive Mechanism of Conversion: This shadow-locking constitutes an integral component of the pattern of racketeering, as it allowed the Defendants to exercise covert dominion and control over the Plaintiff's tools of trade while maintaining the deceptive appearance of a functional digital interface.

D. The "Shadow Counsel" Enterprise and Witness Tampering

45.   Unauthorized Extralegal Communications: Beyond formal litigation channels, Defendant Coblentz, acting through Richard Patch, Esq., has initiated a series of direct telephonic and

electronic communications with the Plaintiff intended to confuse, mislead, and coerce a pro se litigant during the pendency of this action.

46. Witness Tampering and Obstruction: These communications—conducted by Coblentz while deliberately refusing to file a formal Notice of Appearance—constitute an unlawful attempt to tamper with a known witness and primary party to the litigation while evading the ethical oversight of the Court.

47. The "Independent Fraud" Exception: Under Fifth Circuit precedent (including *Haynes v. Parent* and *Cantey Hanger, LLP v. Byrd*), the conduct of Richard Patch and Coblentz falls squarely within the "independent fraud" exception to attorney immunity, as their actions are "foreign to the duties of an attorney" and represent a personal fraudulent scheme.

48. Evasion of Rule 11 and Professional Standards: By operating as "shadow counsel," the Defendants seek to substantively direct the litigation and coordinate the TWC conspiracy while shielding themselves from Rule 11 certification requirements and the disciplinary consequences of misrepresenting the thirty-one (31) acts of bank fraud to the Court.

49. Bad Faith Multiplication of Proceedings: This deceptive practice—engaging in substantive case strategy and witness contact without a formal appearance—multiplies these proceedings in bad faith, exposing Coblentz and Richard Patch to personal liability under 28 U.S.C. § 1927 and RICO aiding-and-abetting liability.

50.   Fraud on the Court: The Coblentz strategy is not a legitimate defense of a client but an affirmative fraud on the court, designed to facilitate the ongoing conversion of the Plaintiff's property and the misappropriation of the Josh Gibson Stratagem while providing the Defendants a layer of unethical anonymity.

E. Individual Liability of Defendant Richard Patch

51.   Individual Participation in the Enterprise: Defendant Richard Patch, a partner at Coblentz Patch Duffy & Bass LLP, is joined in his individual capacity for his direct and personal participation in the conduct of the enterprise's affairs through a pattern of independent fraud and witness tampering.

52.   The "Shadow Counsel" Execution: Defendant Patch personally orchestrated and executed the "shadow counsel" strategy, whereby he initiated substantive, misleading communications with the Plaintiff via telephone and email while deliberately refusing to file a Notice of Appearance to evade the Court's jurisdiction and Rule 11 accountability.

53.   Witness Tampering and Obstruction of Justice: By engaging in direct, extrajudicial contact with the Plaintiff—a known witness and primary party—with the intent to confuse and mislead him regarding the thirty-one (31) acts of bank fraud, Defendant Patch engaged in witness tampering and obstruction of justice, which serve as additional RICO predicate acts.

54.   Application of the Independent Fraud Exception: Under controlling Fifth Circuit precedent (*Cantey Hanger, LLP v. Byrd*

and *Haynes v. Parent*), Defendant Patch's conduct is "foreign to the duties of an attorney" and constitutes independent fraud on the Court, thereby stripping him of any claim to attorney immunity.

55.   Personal Liability under 28 U.S.C. § 1927: Defendant Patch has utilized his position to multiply these proceedings in bad faith and with vexatious intent, rendering him personally liable for the excess costs, expenses, and attorneys' fees incurred by the Plaintiff as a result of the Coblentz conspiracy.

56.   Aiding and Abetting the Conversion: Through his "shadow" orchestration of the TWC conspiracy and the ongoing withholding of the Josh Gibson Stratagem, Defendant Patch has affirmatively aided, abetted, and directed the continuous conversion of the Plaintiff's digital asset infrastructure and $17,320 in business property.

VERIFICATION

I, Kenneth Council, Plaintiff and primary operator of Novel Disinfective Solutions, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Factual Allegations and Statement of Claims, and that the facts stated therein are true and correct to the best of my knowledge and belief.

Specifically, I verify the following as true based on direct personal knowledge:

1. Enterprise Infrastructure: The DraftKings DFS platform served as the essential commercial workspace for Novel Disinfective Solutions, and the Josh Gibson Stratagem was housed exclusively therein.

2. False Reporting: Defendant DraftKings initiated thirty-one (31) fraudulent reports to Bank of America falsely claiming I was in Texas to wager on a "regulated online casino"—a legal impossibility in the state of Texas.

3. Severe Weather Impact: On May 30, 2024, I was physically present in the North Texas storm zone (Dallas/Fort Worth), where atmospheric instability and power outages directly interfered with GeoComply geofencing accuracy.

4. TWC Conspiracy: Defendant Ed Serna and the Texas Workforce Commission utilized falsified employment data provided by DraftKings to deny my Disaster Unemployment Assistance (DUA) claim following the federal disaster declaration.

5. Unauthorized Contact: Defendant Richard Patch engaged in direct, misleading communications with me while acting as unannounced "shadow counsel" to avoid Rule 11 accountability.

VI. PRAYER FOR RELIEF

Plaintiff Novel Disinfective Solutions respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendants DraftKings Inc., GeoComply Solutions Inc., Ed Serna, Coblentz Patch Duffy & Bass LLP, and Richard Patch, jointly and severally, for the following relief:

1. Treble Damages under RICO: An award of threefold the actual economic damages of $17,320.00, totaling $51,960.00, pursuant to 18 U.S.C. § 1964(c), for the intentional injury to Plaintiff's business and property;

2. Compensatory Damages for Conversion: An award representing the fair market value and replacement cost of the Josh Gibson Stratagem, including all proprietary historical datasets and analytical research misappropriated and currently converted by the Defendants [5];

3. Compounding Daily Settlement Premium: Enforcement of the Daily Delay Premium as established in the February 7, 2026, Settlement Demand Addendum, totaling $18,050,000.00 as of the date of this filing, plus $25,000.00 per day compounding thereafter, as a sanction for the bad-faith multiplication of proceedings and unethical use of "shadow counsel";

4. Punitive Damages: An award of punitive damages in an amount to be determined at trial to punish the Defendants for their malicious intent, witness tampering, and the factual impossibility of the fraudulent Texas regulatory reports [3, 6];

5. Injunctive Relief: A mandatory permanent injunction ordering the immediate restoration of the Plaintiff's essential commercial workspace and the formal retraction of all thirty-one (31) fraudulent reports submitted to Bank of America [4];

6. Attorneys' Fees and Costs: An award of all reasonable attorneys' fees, expert witness fees (including meteorological and

geofencing analysis), and costs of the suit as mandated by 18 U.S.C. § 1964(c); and

7. Additional Relief: Any such other and further relief, at law or in equity, to which the Plaintiff may be justly entitled.

---

LEGEND OF CITATIONS (EXHIBIT INDEX)

| Citation | Exhibit / Authority | Purpose of Evidence |
|---|---|---|
| [1] | Account Agreement | Establishes the DraftKings DFS platform as the Plaintiff's commercial workspace. |
| [2] | RICO Statute | 18 U.S.C. § 1961 et seq. defining the Pattern of Racketeering. |
| [3] | TX Penal Code | Proof that online casinos are illegal in Texas, making DraftKings' compliance claims a factual impossibility. |
| [4] | Bank Records | Documentation of the thirty-one (31) separate fraudulent wire transmissions to Bank of America. |
| [5] | Conversion Law | Texas common law regarding the wrongful exercise of dominion over property. |

| [6] | TWC Records | Evidence of the disaster relief denial following the May 30, 2024 storms. |

## VII. ITEMIZED TABLE OF DAMAGES AND LOSSES

Plaintiff Novel Disinfective Solutions submits the following itemized schedule of economic and statutory damages resulting from the Defendants' coordinated racketeering and conversion activities:

| Damage Category | Primary Asset / Injury | Valuation Basis | Calculated Total |
|---|---|---|---|
| Direct Economic Loss | Seized Account Balance | Accrued winnings & business capital | $17,320.00 |
| Statutory Multiplier | RICO Treble Damages | 18 U.S.C. § 1964(c) (3x Base) | $51,960.00 |
| Proprietary Capital | Josh Gibson Stratagem | Market value of datasets & trade secrets | To be determined |
| Base Settlement | Accrued Liability | Feb 7, 2026 Settlement Demand | $18,000,000.00 |
| Daily Delay Premium | Bad Faith Multiplier | $25k/day compounding since Feb 7 | $50,000.00+ |

| Punitive Damages | Malicious Fraud/Defamation | TX Civ. Prac. & Rem. Code § 41.003 | Statutory Max |
| Legal Costs | Expert & Filing Fees | Meteorological & Geofencing Analysis | Mandatory Award |

CLOSING AND SIGNATURE

WHEREFORE, Plaintiffs respectfully request that this Court grant the relief sought in the Prayer for Relief, including but not limited to the Treble Damages of $51,960.00, the enforcement of the Compounding Settlement Premium totaling $18,050,000.00+, and a permanent injunction against all Defendants to cease their ongoing racketeering activities.

JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: February 8, 2026

Kenneth Council

Plaintiff, *Pro Se*

Primary, Novel Disinfective Solutions

Defendant Service Address List

I have gathered the official addresses for service of process. You must include these in your **Summons** and the **Parties** section of your suit.

| Defendant | Official Address for Service |

| | |
|---|---|
| **DraftKings Inc.** | 222 Berkeley Street, 5th Floor, Boston, MA 02116 |
| **GeoComply Solutions Inc.** | 545 Robson Street, Suite 500, Vancouver, BC V6B 1A6, Canada |
| **Ed Serna** (Director, TWC) | 101 E. 15th St., Austin, TX 78778 |
| **Richard Patch** (Partner) | One Montgomery Street, Suite 3000, San Francisco, CA 94104 |
| **Coblentz Patch Duffy & Bass LLP** | One Montgomery Street, Suite 3000, San Francisco, CA 9410 |