IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NOVEL DISINFECTIVE SOLUTIONS and KENNETH COUNCIL, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | Civil Action No. 3:24-CV-1370-D |
| DRAFTKINGS INC., et al., | § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The court now decides several pending motions in this case:

(1) plaintiff Kenneth Council's ("Council's") March 18, 2026 "Motion to Strike [DraftKings Inc.'s ("DraftKings'")] Untimely Filings and for Judicial Entry of Default";

(2) defendant DraftKings' April 15, 2026 "Motion to Dismiss Plaintiffs' Verified Amended Complaint and RICO Case Statement";

(3) Council's April 18, 2026 "Request to the Clerk to Enter Default Against Defendants DraftKings Inc. and Coblentz Patch Duffy & Bass LLP" (the "Coblentz Firm"); and

(4) Council's April 19, 2026 "Motion for Leave to File Motion to Strike Without Certificate of Conference."

For the reasons that follow, the court denies Council's March 18, April 18, and April 19 motions, grants DraftKings' motion to dismiss and dismisses plaintiffs' federal-law claims and declines to exercise supplemental jurisdiction over plaintiffs' state-law claims, and grants

plaintiffs leave to replead.[1]

I

Council, who is proceeding *pro se* and *in forma pauperis*, and his business, Novel Disinfective Solutions ("NDS") (collectively "plaintiffs," unless the context indicates otherwise) allege various federal- and state-law claims that arise out of plaintiffs' use of DraftKings' Daily Fantasy Sports platform to conduct business operations.[2]  In May 2024 defendant GeoComply Solutions Inc.[3] ("GeoComply") notified DraftKings that Council had committed a "location violation," which plaintiffs contend was erroneous.  In response to this "location violation" DraftKings executed an administrative freeze on plaintiffs' account that allegedly resulted in the seizure of intangible personal property as well as of $17,320 of accrued winnings.

Plaintiffs also allege that, between June 24 and August 3, 2024, DraftKings made a series of wire transmissions to Bank of America that characterized as "fraudulent" Council's attempts to charge back deposits made to DraftKings.  Additionally, they allege that

---

[1]DraftKings also requests that the court schedule an in-person status conference pursuant to Fed. R. Civ. P. 16(a).  Because this memorandum opinion and order addresses all outstanding motions in this case, the court denies DraftKings' request without prejudice as premature.

[2]Because Council is proceeding *pro se*, the court construes the allegations of plaintiffs' third amended complaint liberally.  *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam).

[3]Plaintiffs' third amended complaint names "GeoCompply Solutions Inc." as a defendant.  Because this appears to be a typographical error, the court adopts the spelling "GeoComply," which plaintiffs use in the body of their third amended complaint.

- 2 -

DraftKings knowingly submitted falsified employment data to the Texas Workforce Commission to induce defendant Ed Serna ("Serna") and other state officials to deny Council Disaster Unemployment Assistance ("DUA") benefits.

On June 5, 2024 Council filed this lawsuit against DraftKings. The case was referred to two magistrate judges, who both recommended dismissal. These recommendations were withdrawn after Council filed his first and second amended complaints (as a matter of course, and with leave of court, respectively). DraftKings then moved to dismiss Council's second amended complaint, but that motion became moot when the court granted Council leave to amend.

Council then filed a third amended complaint, which added NDS as a plaintiff. The third amended complaint also added defendants GeoComply; Serna (in his individual and official capacities); DraftKings' outside counsel, the Coblentz Firm; and one of its partners, Richard Patch, Esquire ("Patch"). The third amended complaint alleges federal-law claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and 42 U.S.C. § 1983, and state-law claims for conversion, defamation, and fraud.

Council now moves to strike some of DraftKings' filings as untimely and for entry of a default against DraftKings. DraftKings moves to dismiss plaintiffs' third amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Plaintiffs have not filed a response to that motion, but Council, moves, without a certificate of conference, for leave to file a motion to strike DraftKings' motion to dismiss. Council also moves the clerk of court to enter a default against DraftKings and the Coblentz

- 3 -

Firm.  The court is deciding the motions on the briefs, without oral argument.

## II

The court considers together Council's March 18 motion to strike DraftKings' filings as untimely and for judicial entry of judgment, and his April 18 request to the clerk of court to enter a default against DraftKings and the Coblentz Firm.

### A

Council moves to strike DraftKings' motion to extend the answer deadline, the court's subsequent order granting that motion, and DraftKings' now-moot motion to dismiss Council's second amended complaint.  He contends that the court should not have granted DraftKings' motion to extend because some of its attorneys had not yet been admitted to practice in this district.  The court disagrees.  Before DraftKings filed its motion for extension, a Dallas-based attorney who is admitted to this court's bar entered a notice of appearance as DraftKings' counsel.  And as for DraftKings' motion to dismiss Council's second amended complaint (which was also signed by the Dallas-based counsel), DraftKings' out-of-state counsel with the Coblentz Firm had already been admitted *pro hac vice*.

Accordingly, the court declines to strike the filings that Council challenges.

### B

Council also requests that the clerk of court enter a default against DraftKings and the Coblentz Firm on the ground that they did not timely file a responsive pleading.  The clerk of court declined to enter a default, and the court now declines to do so as well.

- 4 -

DraftKings filed its motion to dismiss by the March 5, 2026 deadline set in the court's order granting DraftKings' motion to extend. Consequently, the clerk of court declined to enter a default. And in response to Council's filing of his third amended complaint, DraftKings timely filed the instant motion to dismiss, which seeks dismissal of all claims against DraftKings and the Coblentz Firm. "The filing of a motion to dismiss is normally considered to constitute an appearance" such that default judgment is inappropriate. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 277 (5th Cir. 1989).

Accordingly, the court denies Council's March 18 motion to strike and for entry of a default and his April 18 request for entry of a default.

## III

Council also seeks leave to file, without a certificate of conference, a motion to strike DraftKings' motion to dismiss.

## A

N.D. Tex. Civ. R. 7.1(a) requires "the moving party [to] confer with an attorney for each party affected by the requested relief to determine whether the motion is opposed[,] . . . [except] for motions to dismiss, motions for judgment on the pleadings, motions for summary judgment, motions for new trial, or when a conference is not possible." Rule 7.1(b) requires each motion for which a conference is necessary to include a certificate of conference.

## B

Council contends that a conference was not possible because no opposing counsel was

an authorized representative. The court disagrees. As the court has already explained, DraftKings appeared through Dallas-based counsel who was admitted to this court's bar. So even assuming *arguendo* that Council is correct that members of the Coblentz Firm were not authorized representatives in this case, Council could have conferred with DraftKings' Dallas-based counsel. His failure to do so is of itself a sufficient ground to deny his motion. *See, e.g.*, *U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*, 2004 WL 579505, at *3 n.1 (N.D. Tex. Mar. 18, 2004) (McBryde, J.), *aff'd*, 417 F.3d 450 (5th Cir. 2005); *City Bank v. BancInsure, Inc.*, 2012 WL 13019589, at *1 n.1 (N.D. Tex. Jan. 23, 2012) (Cummings, J.).

Moreover, Council has failed to demonstrate that the Coblentz Firm's attorneys are not authorized representatives in this case. These attorneys were admitted *pro hac vice*. The cases that Council cites to support his position are inapposite. *Preston v. Univ. of Ark. For Med. Scis.*, 128 S.W.3d 430, 436 (Ark. 2003)—a Supreme Court of Arkansas case—involved the filing of a complaint by out-of-state counsel who had not yet been admitted *pro hac vice* and did not have local counsel. And *Jamieson v. Slater*, 2006 WL 3421788, at *5-7 (D. Ariz. Nov. 27, 2006), involved a motion to disqualify counsel based on Arizona's rules of professional conduct. To the extent that Council intends to move for similar relief here, he has not met his burden of demonstrating that disqualification is proper under the relevant ethical standards. *See Galderma Lab'ys, L.P. v. Actavis Mid Atl. LLC*, 927 F.Supp.2d 390, 394-95 (N.D. Tex. 2013) (Kinkeade, J.) ("Disqualification cases are guided by state and national ethical standards adopted by the Fifth Circuit[,] . . . the Texas Disciplinary Rules of Professional Conduct[,] . . . [and] local rules promulgated by the local court itself." (citations

omitted)); *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 559 F.Supp.3d 530, 535 (E.D. La. 2021) ("[T]he party seeking disqualification bears the burden of proving a conflict of interest requiring disqualification.").[4]

Accordingly, the court denies Council's April 19, 2026 motion for leave to file, without a certificate of conference, a motion to strike DraftKings' motion to dismiss.

IV

The court turns now to DraftKings' motion to dismiss plaintiffs' third amended complaint. The court considers initially whether plaintiffs have plausibly pleaded their federal-law civil RICO claims against DraftKings.

A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the] plaintiffs' [third] amended complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (final alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff[s] must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

_____

[4]Council's proposed motion to strike relies on his same contentions that DraftKings lacks authorized counsel in this case. So even if the court were to consider his motion to strike, it would deny the motion.

plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

B

Plaintiffs do not specify the section of the RICO statute under which they seek to recover. But consistent with its duty to read *pro se* complaints liberally, the court will assume that plaintiffs intend to bring claims under each of subsections 1962(a)-(d).

"Three elements are common to claims brought under any of these subsections: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 201 (5th Cir. 2015) (citation and internal quotation marks omitted). "To prove a 'pattern of racketeering activity,' a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134,

- 8 -

1139-40 (5th Cir. 1992).

Moreover, plaintiffs who plead fraud as a predicate act in a civil RICO claim—like plaintiffs do here—must satisfy the particularity requirements of Rule (9)(b). *Id.* at 1138. "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* at 1139 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (2d. ed. 1990)).

C

Even assuming *arguendo* that plaintiffs pleaded with particularity the predicate acts of wire fraud, they have not plausibly pleaded that DraftKings engaged in a pattern of racketeering activity. Plaintiffs allege that "[b]etween June 24 and August 3, 2024, . . . DraftKings initiated thirty-one (31) distinct fraudulent interstate wire transmissions to Bank of America, specifically characterizing [Council's] lawful chargebacks as 'fraudulent.'" 3d Am. Compl. ¶ 7. But plaintiffs do not plead facts that allow the court to draw the reasonable inference that these alleged acts of wire fraud—which took place over the course of a few weeks and were unique to Council's situation—are part of a continuous pattern that threatens long-term criminal activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989) ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy th[e] [continuity] requirement."); *Tel-Phonic Servs.*, 975 F.2d at 1140 ("[T]hese two alleged instances of fraud occurred only seven months apart."); *PrevMED, Inc. v. MNM-1997, Inc.*, 2015 WL 4162729, at *4 (N.D. Tex. July 10, 2015) (Fitzwater, J.)

(concluding that allegations of predicate acts that took place over the course of two and a half months were insufficient to plausibly plead a civil RICO claim).  At best, plaintiffs allege that DraftKings engaged in short-term criminal conduct, which "is not the concern of RICO." *Tel-Phonic Servs.*, 975 F.2d at 1140 (citation omitted).[5]

Accordingly, the court dismisses plaintiffs' civil RICO claims against DraftKings.

D

Plaintiffs also bring a claim under 42 U.S.C. § 1983.  "To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (citation and internal quotation marks omitted).

Plaintiffs have not alleged, even in a conclusory fashion, that DraftKings acted under the color of state law.  And although a private entity can qualify as a state actor "in a few limited circumstances," *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 443 (5th Cir.) (citation omitted), *cert. denied*, 146 S. Ct. 329 (2025), plaintiffs' allegations do not allow the court to reasonably infer that any such circumstances are present here.

Accordingly, the court dismisses plaintiffs' § 1983 claim against DraftKings.

---

[5]Moreover, to the extent that plaintiffs assert a RICO conspiracy claim under § 1962(d), they have not "allege[d] facts implying any agreement involving each of the [d]efendants to commit at least two predicate acts." *Tel-Phonic Servs.*, 975 F.2d at 1140.

V

The court considers next whether plaintiffs have plausibly pleaded their federal-law claims against the Coblentz Firm and Patch.

Plaintiffs allege that the Coblentz Firm and Patch orchestrated a "shadow counsel" strategy, whereby they attempted to communicate with and mislead Council without formally appearing before the court. These allegations, even construed liberally, do not enable the court to reasonably infer that the Coblentz Firm and Patch engaged in a "pattern of racketeering" for purposes of RICO. *See N. Cypress Med. Ctr.*, 781 F.3d at 201. Nor are they sufficient to plausibly plead that the Coblentz Firm or Patch acted "under color of state law" for purposes of § 1983. *Doe ex rel. Magee*, 675 F.3d at 854 (citation omitted).

Accordingly, the court dismisses plaintiffs' federal-law claims against the Coblentz Firm and Patch.

VI

The court raises *sua sponte* that Rule 12(b)(6) dismissal of plaintiffs' federal-law claims against GeoComply and Serna is appropriate.

A

A district court has the authority to consider the sufficiency of a complaint and dismiss an action *sua sponte*, as long as the procedure it employs is fair. *See, e.g.*, *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 733-34 n.7 (N.D. Tex. 2011) (Fitzwater, C.J.) (noting that district court has authority to consider sufficiency of complaint and dismiss action on its own motion as long as procedure employed is fair, raising ground

- 11 -

for dismissal *sua sponte*, and concluding that procedure was fair because court was granting leave to replead). Here, because the court is granting plaintiffs leave to replead, it can raise Rule 12(b)(6) dismissal *sua sponte*.

### B

Plaintiffs allege that GeoComply issued a false "location jumping" report to DraftKings. This lone allegation is insufficient to plausibly plead that GeoComply is liable under the RICO statute or § 1983. Similarly, plaintiffs' allegation that Serna denied Council DUA benefits based on false information is alone insufficient to state a claim under either statute.

Accordingly, the court dismisses plaintiffs' federal-law claims asserted against GeoComply and Serna.

### VII

The court now considers whether it should exercise supplemental jurisdiction over plaintiffs' state-law claims given that it is dismissing their federal-law claims.[6]

Although the court can exercise supplemental jurisdiction over plaintiffs' state-law claims under 28 U.S.C. § 1367(a), in this circuit "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims

---

[6]Having dismissed all of plaintiffs' federal-law claims, the court may still possess original jurisdiction over their state-law claims under 28 U.S.C. § 1332. But plaintiffs do not allege facts that enable the court to reasonably infer that all plaintiffs are completely diverse citizens from all defendants. *See Boone v. Wilson*, 2018 WL 9988322, at *1 (N.D. Tex. Aug. 27, 2018) (Fitzwater, J.).

- 12 -

are eliminated before trial[.]" *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). Accordingly, the court in its discretion declines to exercise supplemental jurisdiction over plaintiffs' state-law claims and dismisses them without prejudice. *See ER Addison, LLC v. Aetna Health Inc.*, 2025 WL 1869591, at *3 (N.D. Tex. July 3, 2025) (Fitzwater, J.).

## VIII

Alternatively, and independently, the court dismisses NDS's claims without prejudice because it has failed to plausibly plead its organizational structure.

On the one hand, to the extent that NDS is a corporation, partnership, or association, it "cannot appear in federal court unless represented by a licensed attorney." *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004) (citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993) ("[T]he lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships, or associations to appear in federal court otherwise than by licensed counsel.")). No licensed attorney has appeared on behalf of NDS in this case. On the other hand, if NDS is a sole proprietorship, it is unclear whether it possesses capacity under Texas law[7] to assert claims independent of Council's. *See Brantley v. Kuntz*, 98 F.Supp.3d 884, 887 n.1 (W.D. Tex. 2015) ("[T]here is no legal distinction between the sole proprietor and the sole proprietorship under Texas law.").

---

[7]Under Rule 17(b), for a plaintiff who is neither an individual nor a corporation, the capacity to sue or be sued is generally determined by the law of the state in which the court resides (here, Texas).

Because plaintiffs have failed to plausibly plead NDS's organizational structure, the court is unable to determine whether NDS can assert claims in this case, with or without counsel. Accordingly, the court dismisses NDS's claims without prejudice. To the extent that NDS wishes to assert claims in a future amended complaint, it must plausibly plead its organizational structure.

IX

Although the court is dismissing plaintiffs' claims, it will grant them leave to amend. *See, e.g.*, *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). There is no indication that plaintiffs cannot, or are unwilling to, cure the defects that the court has identified. And allowing them to file a fourth amended complaint is not excessive under the circumstances of this case. Because Council's previous complaints became moot before the court could rule on dismissal, this memorandum opinion and order is the first to evaluate the merits of plaintiffs' claims. Moreover, as a *pro se* plaintiff, Council should be given a fair opportunity to plead his best case. *See, e.g.*, *Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *1 (N.D. Tex. Apr. 12, 2004) (Fitzwater, J.) ("Although the court granted Merrill Lynch's motion to dismiss, it gave Robinette one more opportunity to plead his best case, because he was proceeding *pro se*."). Accordingly, the court will grant plaintiffs 28 days from the date this memorandum opinion

and order is filed to file a fourth amended complaint.

\*   \*   \*

For the reasons explained, the court denies Council's March 18, April 18, and April 19 motions and denies DraftKings' April 29 motion.  The court grants DraftKings' April 15 motion to dismiss and dismisses plaintiffs' federal-law claims and declines to exercise supplemental jurisdiction over plaintiffs' state-law claims.  And the court grants plaintiffs leave to replead within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

May 20, 2026.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 15 -